IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT E. CONNER, | No. C 09-4650 MMC (PR) |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | |
| K.R. CRUSE, et al., | |
| Defendants. | |

On September 30, 2009, plaintiff, a California prisoner incarcerated at Pelican Bay State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. By separate order filed concurrently herewith, plaintiff has been granted leave to proceed in forma pauperis.

**DISCUSSION**

A.   Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C.

§ 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

B.    Plaintiff's Claim

The following allegations are derived from plaintiff's complaint and the attachments thereto.  On October 23, 2007, plaintiff appeared at a classification hearing, for which he had received no prior notice, and was reassigned from his housing placement in A-Facility to the Behavior Modification Unit ("BMU").  Initially, plaintiff remained in the BMU for ninety-nine days, until January 29, 2008, at which point he was moved to administrative segregation pending a hearing on charges of attempted murder.  Thereafter, on March 5, 2008, plaintiff was returned to the BMU, where he remained until he was released to B-Facility on March 20, 2008.

During the period relevant to the allegations in the complaint, the BMU was used as a housing unit for general population inmates who had been "designated as requiring modification due to significant disciplinary problems."  (Compl. Ex. E at 1.)  Inmates placed in the BMU came from four categories: (1) those with a significant disciplinary history within 180 days of the most current rules violation report; (2) those found guilty of an offense for which a determinate term of confinement in administrative segregation had been assessed, or deemed a threat to the safety of others or the security of the institution; (3) inmates engaged in organized criminal activity; and (4) inmates who were determined to be compatible with another inmate but refused to voluntarily double cell, or who refused to participate in the prison's racial integration policy.  (Id. at 1-3.)  Inmates placed in the BMU are not released back to normal general population housing until they complete four behavioral steps, each of which takes approximately thirty days.  (Id. at 4-5.)  Plaintiff alleges that while housed in the BMU he was denied family visits, had limited canteen access, no telephone calls, limited yard access, no recreational activities, limited access to personal property, and lost his job and A1A work group status.

2

Plaintiff appealed his placement in the BMU. At the first and second levels of review the appeals were denied. On June 13, 2008, at the Director's Level of review, however, it was determined that plaintiff erroneously had been placed in the BMU in October 2007, as none of the four categories for inmate BMU-placement was applicable to him. (Compl. Ex. H ("Director's Level Appeal Decision" at 1-2.) Specifically, plaintiff had been placed and held in the BMU pending an investigation of the rules violation report he had been issued on the attempted murder charge, and the BMU is not used to hold inmates pending investigations. (Id.) Consequently, the Director ordered the following remedy: "The PBSP shall direct the UCC [Classification Committee] to restore the penalties that were assessed as a result of the appellant's placement in the BMU on October 23, 2007. The appellant's WG/PG [Work Group/Privilege Group] shall be restored to the previous designation and the behavioral credits recalculated." (Id. at 2.)

In the instant action plaintiff alleges the violation of his right to due process because he was not provided with notice and a hearing prior to his BMU placement. He seeks injunctive relief to compel compliance with the Director's order, and damages.

The requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). A protected liberty interest may be created either by the Due Process Clause of its own force or by states through statutes or regulations. Sandin v. Connor, 515 U.S. 472, 483-84 (1995). Where prison conditions are at issue, a change in conditions so severe as to affect the sentence imposed in an unexpected manner implicates the Due Process Clause itself, whether or not such change is authorized by state law. Id. at 484. Neither changes in conditions relating to classification and reclassification nor the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, violate the Due Process Clause itself. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (classification); Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (administrative segregation).

3

A deprivation authorized by state law that is less severe or more closely related to the expected terms of confinement also may amount to deprivation of a protected liberty interest, provided such deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, or "will inevitably affect the duration of [a] sentence," id. at 487.  Once a protected interest is established, the court must determine what process is due before the interest may be taken away. See Wilkinson v. Austin, 545 U.S. 209, 224-25 (2005).

Here, when liberally construed, plaintiff's allegations that he was placed in the BMU without a hearing and, as a result, was denied access to various privileges and amenities that he had received in the general population, state a cognizable claim for the denial of due process.  Additionally, plaintiff has adequately linked to his allegations those defendants who are prison officials at PBSP.  Defendant Matthew Cate, Director of the California Department of Corrections and Rehabilitation, is named solely in his respondent superior capacity, however, and, consequently, will be dismissed.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding respondeat superior liability does not attach under § 1983 under any circumstance).

**CONCLUSION**

1. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, **a copy of the complaint in this matter and all attachments thereto (Docket No. 1), and a copy of this order upon the following defendants, all at Pelican Bay State Prison: K.R. Cruse, D. Melton, B. Patton, M. Moss, M.A. Cook, Robert A. Horel and F. Jacquez.**

The Clerk shall also mail a courtesy copy of the AC and this order to the California Attorney General's Office.

2. Within **ninety (90)** days of the date this order is filed, defendants shall file a motion for summary judgment or other dispositive motion with respect to the claims found to be cognizable above.  **If defendants are of the opinion that this case cannot be resolved by summary judgment or other dispositive motion, defendants shall so inform the**

**Court prior to the date the motion for summary judgment or other dispositive motion is due.**

3. The Court hereby extends the time to file an answer or waiver of answer, see 42 U.S.C. § 1997e(g)(1), to a date to be set after the Court has ruled on the above-referenced motion or received notice that such a motion cannot be filed.

4. If defendants elect to file a motion to dismiss on the grounds plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), defendants shall do so in an unenumerated Rule 12(b) motion pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003), cert. denied Alameida v. Terhune, 540 U.S. 810 (2003).

5. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.

6. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than **thirty (30)** days from the date defendants' motion is filed.

    a. In the event defendants file an unenumerated motion to dismiss under Rule 12(b), plaintiff is hereby cautioned as follows:[1]

> The defendants have made a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground you have not exhausted your administrative remedies. The motion will, if granted, result in the dismissal of your case. When a party you are suing makes a motion to dismiss for failure to exhaust, and that motion is properly supported by declarations (or other sworn testimony) and/or documents, you may not simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or documents, that contradict the facts shown in the defendant's declarations and documents and show that you have in fact exhausted your claims. If you do not submit your own evidence in opposition, the motion to dismiss, if appropriate, may be granted and the case dismissed.

    b. In the event defendants file a motion for summary judgment, the Ninth Circuit has held that the following notice should be given to plaintiffs:

---

[1] The following notice is adapted from the summary judgment notice to be given to pro se prisoners as set forth in Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). See Wyatt v. Terhune, 315 F.3d at 1120 n.14.

5

>    The defendants have made a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>    Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).  Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that failure to file an opposition to defendants' motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial.  See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir. 1994).

    7.  Defendants shall file a reply brief no later than **fifteen (15)** days after plaintiff's opposition is filed.

    8.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

    9.  All communications by the plaintiff with the Court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

    10.  Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

11. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

12. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

IT IS SO ORDERED.

DATED: April 23, 2010

MAXINE M. CHESNEY
United States District Judge